

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2020 SEP 18  P 6: 10

CAROL L. MICHEL
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA **FELONY**

### INDICTMENT FOR CONSPIRACY TO COMMIT
### MAIL FRAUD, MAIL FRAUD, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** $20-00092$ |
| **v.** | * | **SECTION:** SECT.R MAG.4 |
| **CORNELIUS GARRISON** | * | **VIOLATIONS: 18 U.S.C. § 371** |
| **DONIESHA GIBSON** | | **18 U.S.C. § 1341** |
| **CHANDRIKA BROWN** | * | **18 U.S.C. § 2** |
| **ISHAIS PRICE** | | |
| **AISHA THOMPSON** | * | |
| **DEWAYNE COLEMAN** | | |
| **DONISESHA LEE** | * | |
| **a/k/a Donisha Lee** | | |
| **DONREION LEE** | * | |
| **ERICA LEE THOMPSON** | | |

\*      \*      \*

The Grand Jury charges that:

### COUNT 1
(Conspiracy to Commit Mail Fraud)

### A.   AT ALL TIMES MATERIAL HEREIN:

1.     Defendants **CORNELIUS GARRISON** ("**GARRISON**"), **DONIESHA**

**GIBSON** ("**GIBSON**"), **CHANDRIKA BROWN** ("**BROWN**"), **ISHAIS PRICE** ("**PRICE**"),

**AISHA THOMPSON** ("**THOMPSON**"), **DEWAYNE COLEMAN** ("**COLEMAN**"),

Fee___ u8/t
Process____
X Dktd____
___ CtRmDep____
___ Doc. No.____

DONISESHA LEE ("DONISHA LEE"), DONREION LEE, and ERICA LEE THOMPSON ("ERICA LEE") resided in the New Orleans metropolitan area and were involved in staged accidents with other vehicles occurring in the New Orleans area.

2.      Slammers A and B were individuals who drove vehicles and intentionally collided with 18-wheeler tractor-trailers and other commercial vehicles in order to stage accidents.

3.      Slammer A taught **GARRISON** how to stage accidents with other vehicles.

4.      **GARRISON** served as a slammer.

5.      Slammers A and B routinely worked together to stage accidents for various local personal injury attorneys.

6.      Slammer A introduced **GARRISON** to Co-Conspirator A.

7.      Slammer B introduced **GARRISON** to Attorney A.

8.      Slammers A and B are deceased.

9.      Attorney A was a personal injury attorney licensed to practice in Louisiana and operated an office in New Orleans, Louisiana.

10.     Beginning in or about May 2016, Attorney B was a personal injury attorney licensed to practice in Louisiana.

11.     Beginning at a time unknown, Co-Conspirator A was associated with an office property located in the Eastern District of Louisiana.

12.     Beginning at a time unknown, but after in or about May 2016 and until in or about 2018, Attorney B operated his/her law practice out of the property associated with Co-Conspirator A.

13.     Co-Conspirator A solicited and/or referred personal injury clients to Attorney B and another attorney known to the Grand Jury.

2

14.     **ERICA LEE**, **THOMPSON**, **DONISHA LEE**, and **DONREION LEE** were related.

15.     Co-Conspirator B was an acquaintance of **ERICA LEE**.

16.     Passenger A was an acquaintance of Co-Conspirator B.

### The October 15, 2015, Staged Accident (2014 Dodge Avenger)

17.     The intersection of Interstate 10 eastbound and Interstate 510 was located in the Eastern District of Louisiana.

18.     Hotard Coaches, Inc. d/b/a Hotard Bus Lines ("Hotard") was a commercial bus carrier, incorporated in Louisiana and headquartered in New Orleans, Louisiana.

19.     All Aboard America! Inc Holdings ("All Aboard"), incorporated in Colorado and headquartered in Lakewood, Colorado, was the parent company that owned Hotard.

20.     Hotard and All Aboard were insured by Lancer Insurance Company ("Lancer").

21.     Lancer, incorporated in Illinois, was headquartered in Long Beach, New York.

22.     Hotard and All Aboard had a deductible of $100,000.00 for vehicle accidents, and Lancer provided insurance coverage for Hotard and All Aboard.

23.     On or about April 4, 2016, a Petition for Damages was filed in the First City Court for the City of New Orleans ("FCC"), on behalf of State Farm Fire & Casualty Company As Subrogee For **GIBSON** against Hotard, All Aboard, and Lancer ("State Farm/Gibson Lawsuit") relating to a staged accident that occurred on October 15, 2015, between a Hotard bus and a vehicle owned by **GIBSON**.

24.     On or about June 16, 2016, a Petition for Intervention was filed on behalf of **GIBSON** in the State Farm/Gibson Lawsuit, wherein it was alleged that **GIBSON** suffered personal injuries.

25.     On or about September 29, 2016, Attorney A filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana ("CDC"), on behalf of **GARRISON** against Hotard, All Aboard, and Lancer ("Garrison Lawsuit").

26.     On or about October 17, 2016, a Petition for Damages was filed on behalf of **PRICE** and **BROWN** against Hotard, All Aboard, and Lancer ("Price and Brown Lawsuit").

27.     The lawsuits filed by **GIBSON**, **PRICE**, **BROWN**, and **GARRISON** sought to recover damages from Hotard, All Aboard, and Lancer for the alleged actions of the Hotard bus driver.

28.     Hotard, All Aboard, and Lancer utilized a law firm based in Lafayette, Louisiana, to provide legal representation with respect to the staged accident that occurred on October 15, 2015, between the Hotard bus and a vehicle owned by **GIBSON**.

29.     On or about December 5, 2016, an Unopposed Motion to Transfer the State Farm Lawsuit to CDC was signed by a FCC judge and the matter was realloted to CDC.

30.     On or about August 12, 2017, Attorney B filed a Motion to Substitute **GARRISON's** counsel in the Garrison Lawsuit.

31.     On or about October 6, 2017, Attorney A withdrew from representing **GARRISON**, and Attorney A filed a Petition for Intervention in order to protect his/her fees.

### The September 6, 2017, Staged Accident (2015 Toyota RAV4)

32.     The section of Interstate 10 eastbound, milepost 239, near the Almonaster exit was located in the Eastern District of Louisiana.

33.     Averitt Express, Inc. ("Averitt") was an interstate commercial trucking company headquartered in Cookeville, Tennessee.

34.     ACE American Insurance Company ("ACE") was headquartered in Philadelphia, Pennsylvania.

35.     Averitt was self-insured up to $1,000,000.00 for vehicle accidents, and ACE provided excess insurance coverage for Averitt.

36.     GEICO Insurance Company ("GEICO") maintained offices throughout the United States, including Macon, Georgia.

37.     GEICO insured the vehicle purportedly used by **ERICA LEE** on or about September 6, 2017.

38.     GEICO utilized a law firm based in New Orleans to provide legal representation with respect to the vehicle purportedly used by **ERICA LEE** on or about September 6, 2017.

39.     On or about July 25, 2018, a Petition for Damages was filed in CDC, on behalf of **ERICA LEE** ("Erica Lee Lawsuit").

40.     The Erica Lee Lawsuit sought to recover damages from Averitt and Truck Driver A.

41.     On or about August 27, 2018, a Petition for Damages was filed in CDC, on behalf of **THOMPSON**, **COLEMAN**, **DONISHA LEE**, and **DONREION LEE** ("Thompson Lawsuit").

42.     The Thompson Lawsuit sought to recover damages from Averitt, ACE, GEICO, Truck Driver A, and **ERICA LEE**.

## B.    THE CONSPIRACY:

Beginning at a time unknown, and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **CORNELIUS GARRISON**, **DONIESHA GIBSON**, **CHANDRIKA BROWN**, **ISHAIS PRICE**, **AISHA THOMPSON**,

**DEWAYNE COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE**, and others known and unknown to the Grand Jury, willfully and knowingly did combine, conspire, confederate, and agree to devise a scheme and artifice to defraud and to obtain money and property from insurance companies and commercial vehicle companies by means of materially false and fraudulent pretenses, representations, and promises, and willfully cause mail matter to be delivered by the United States Postal Service for the purpose of executing or attempting to execute the Scheme to Defraud set forth in Section C, in violation of Title 18, United States Code, Section 1341.

## C.   THE SCHEME AND ARTIFICE TO DEFRAUD:

### Introduction

It was part of the scheme and artifice to defraud that **GARRISON** staged accidents mostly on Interstate 10 from Slidell to Baton Rouge, Louisiana.

It was further part of the scheme and artifice to defraud that **GARRISON** targeted commercial vehicles, including tractor-trailers, that were changing lanes and would strike the commercial vehicle or tractor-trailer in their blind spot.

It was further part of the scheme and artifice to defraud that **GARRISON** preferred to stage accidents at night so that there were fewer potential witnesses.

It was further part of the scheme and artifice to defraud that **GARRISON** told the passengers to call 911 after the staged accident to make a false report.

It was further part of the scheme and artifice to defraud that **GARRISON** would usually exit the vehicle from the passenger side in order to avoid being seen by the driver of the other vehicle.

It was further part of the scheme and artifice to defraud that Co-Conspirator A, who worked closely with Attorney B, knew that **GARRISON** was staging accidents.

It was further a part of the scheme and artifice to defraud that Co-Conspirator A instructed **GARRISON** on the number of passengers to include in staged accidents.

It was further part of the scheme and artifice to defraud that Co-Conspirator A paid **GARRISON** for staging accidents.

It was further part of the scheme and artifice to defraud that Co-Conspirator A instructed **GARRISON** to lie about payments he received from Co-Conspirator A if ever asked.  Co-Conspirator A told **GARRISON** to tell people the money that **GARRISON** received for staging the illegal accidents was for construction work performed for Co-Conspirator A.

It was further part of the scheme and artifice to defraud that Co-Conspirator A instructed **GARRISON** to avoid areas patrolled by the Louisiana State Police and instead stage accidents under the jurisdiction of the New Orleans Police Department ("NOPD").

It was further part of the scheme and artifice to defraud that **GARRISON** staged over fifty (50) accidents for Co-Conspirator A and that Attorney B usually handled the representation of the plaintiffs involved in the staged accidents.

It was further part of the scheme and artifice to defraud that, beginning at a time unknown and continuing to in or about summer 2019, Co-Conspirator A paid **GARRISON** at least $150,000.00 for staging accidents.

### The October 15, 2015, Staged Accident (2014 Dodge Avenger)

It was part of the scheme and artifice to defraud that, on or about October 15, 2015, **GIBSON**, **BROWN**, and **PRICE** met with **GARRISON** and agreed to stage an automobile accident in order to obtain money through fraud.

7

It was further part of the scheme and artifice to defraud that **GIBSON**, **BROWN**, and **PRICE** agreed to allow **GARRISON** to drive **GIBSON's** vehicle, a 2014 Dodge Avenger ("Avenger").

It was further part of the scheme and artifice to defraud that **GARRISON** drove **GIBSON**, **BROWN**, and **PRICE** in the Avenger, to locate another vehicle to collide with in the area of Interstate 10 eastbound and Interstate 510.

It was further part of the scheme and artifice to defraud that, at approximately 6:13 P.M., **GARRISON**, while driving east on Interstate 10, observed a 2007 commercial bus operated by Hotard passing the intersection flyover for Interstate 510, and that **GARRISON** intentionally collided with the Hotard bus.

It was further part of the scheme and artifice to defraud that **GARRISON** switched seats in the Avenger with **GIBSON** after the collision to make it appear that **GIBSON** was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that **GARRISON**, **GIBSON**, **BROWN**, and **PRICE** contacted the NOPD to report that they had been in an automobile accident.

It was further part of the scheme and artifice to defraud that **GIBSON** falsely reported to the NOPD that she had been the driver of the Avenger and that the Hotard bus had struck her vehicle while changing lanes.

It was further part of the scheme and artifice to defraud that **GARRISON** advised **GIBSON**, **BROWN**, and **PRICE** to claim that they were injured as a result of the staged accident and to seek medical treatment.

It was further part of the scheme and artifice to defraud that **GIBSON** and **BROWN** sought medical treatment with doctors and healthcare providers who are known to the Grand Jury, even though neither of them were injured as a result of the staged accident.

It was further part of the scheme and artifice to defraud that Slammer B paid **GARRISON** approximately $600.00 for the October 15, 2015 staged accident.

It was further part of the scheme and artifice to defraud that, on or about June 16, 2016, a Petition for Intervention was filed in CDC on behalf of **GIBSON** in the State Farm/Gibson Lawsuit.

It was further part of the scheme and artifice to defraud that, on or about September 29, 2016, Attorney A filed the Garrison Lawsuit in CDC.

It was further part of the scheme and artifice to defraud that, on or about October 17, 2016, the Price and Brown Lawsuit was filed in CDC.

It was further part of the scheme and artifice to defraud that, on or about January 29, 2017, Attorney B demanded approximately $2,000,000.00 in settlement for **GARRISON**.

It was further part of the scheme and artifice to defraud that, on or about December 11, 2017, an attorney known to the Grand Jury demanded approximately $20,815.45 in settlement for **GIBSON**.

It was further part of the scheme and artifice to defraud that, on or about February 10, 2017, an attorney known to the Grand Jury demanded approximately $6,000.00 in settlement for **BROWN** and $17,500.00 in settlement for **PRICE**.

It was further part of the scheme and artifice to defraud that **GARRISON** was purportedly treated by doctors who are known to the Grand Jury at the direction of Attorney B.

It was further part of the scheme and artifice to defraud that Co-Conspirator A told **GARRISON** that he would get more money through the lawsuit if he had surgery.

It was further part of the scheme and artifice to defraud that, on or about January 12, 2018, **GARRISON** provided false testimony in a deposition taken in conjunction with the Garrison, State Farm/Gibson, and the Price and Brown Lawsuits.

### The September 6, 2017, Staged Accident (2015 Toyota RAV4)

It was further part of the scheme and artifice to defraud that, at a time unknown but prior to on or about September 6, 2017, Co-Conspirator B contacted **ERICA LEE** and arranged a meeting between **ERICA LEE** and Passenger A for the purpose of staging an automobile accident.

It was further part of the scheme and artifice to defraud that **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE** agreed to stage an accident.

It was further part of the scheme and artifice to defraud that **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE** used **ERICA LEE's** 2015 Toyota RAV4 ("RAV4") to pick up Passenger A and **GARRISON**.

It was further part of the scheme and artifice to defraud that **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE** agreed to allow **GARRISON** to drive to **ERICA LEE's** RAV4 for the purpose of staging an automobile accident with a tractor-trailer in order to obtain money through fraud.

It was further part of the scheme and artifice to defraud that **GARRISON** drove **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, **ERICA LEE**, and Passenger A in the RAV4 to locate another vehicle to collide with on Interstate 10 in the vicinity of the Almonaster exit.

It was further part of the scheme and artifice to defraud that on or about September 6, 2017, at approximately 10:05 P.M., **GARRISON**, while driving east on Interstate 10, observed a 2016

10

Freightliner tractor-trailer operated by Averitt and that **GARRISON** intentionally collided with the Averitt tractor-trailer.

It was further part of the scheme and artifice to defraud that **GARRISON** exited **ERICA LEE's** RAV4 after the collision and told **ERICA LEE** to get behind the wheel of the RAV4 to make it appear that **ERICA LEE** was driving the vehicle at the time of the staged accident.

It was further part of the scheme and artifice to defraud that **ERICA LEE** contacted the NOPD to report that she had been in an automobile accident.

It was further part of the scheme and artifice to defraud that **ERICA LEE** falsely reported to the NOPD that she had been the driver of the RAV4 and that the tractor-trailer had struck her vehicle.

It was further part of the scheme and artifice to defraud that Passenger A falsely told the NOPD that she was **AISHA THOMPSON**.

It was further part of the scheme and artifice to defraud that, a day or two after the accident, **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, **ERICA LEE**, and **THOMPSON** went to an attorney known to the Grand Jury for the purpose of collecting money from the insurance and trucking company.

It was further part of the scheme and artifice to defraud that an attorney known to the Grand Jury referred **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, **ERICA LEE**, and **THOMPSON** to doctors and healthcare providers who are known to the Grand Jury.

It was further part of the scheme and artifice to defraud that **THOMPSON** was treated for approximately six months despite not being in the RAV4 at the time of the staged accident.

It was further part of the scheme and artifice to defraud that, on or about April 11, 2018, and on or about July 6, 2018, an attorney known to the Grand Jury mailed correspondence via the

U.S. Postal Service to ACE in Philadelphia, Pennsylvania containing settlement demands for policy limits on behalf of **THOMPSON**, **COLEMAN**, **DONISEHA LEE**, and **DONREION LEE**.

It was further part of the scheme and artifice to defraud that, on or about July 25, 2018, the Erica Lee Lawsuit was filed in CDC.

It was further part of the scheme and artifice to defraud that, on or about August 27, 2018, the Thompson Lawsuit was filed in CDC.

It was further part of the scheme and artifice to defraud that, on or about March 25, 2019, **THOMPSON**, **COLEMAN**, **DONISEHA LEE**, and **DONREION LEE** endorsed settlement checks of approximately $30,000.00 that were deposited into their attorney's bank account.

It was further part of the scheme and artifice to defraud that, on or about March 26, 2019, **COLEMAN**, **DONISEHA LEE**, and **DONREION LEE** each provided false testimony in depositions taken in conjunction with the Thompson Lawsuit filed on their behalf.

It was further part of the scheme and artifice to defraud that, on or about April 9, 2019, **THOMPSON** provided false testimony in a deposition taken in conjunction with the Thompson Lawsuit filed on her behalf.

**D.    OVERT ACTS:**

### The October 15, 2015, Staged Accident (2014 Dodge Avenger)

The below listed Overt Acts all occurred on or about October 15, 2015, unless noted otherwise.

1.    At some time prior to the October 15, 2015, staged accident, **GARRISON** contacted **GIBSON** to see if she was interested in staging an automobile accident in order to obtain money through fraud, and **GIBSON** agreed.

2. **GIBSON** then recruited **BROWN** and **PRICE** to participate in the staged accident in order to obtain money through fraud.

3. **GIBSON**, **BROWN**, and **PRICE** drove **GIBSON's** Avenger and picked up **GARRISON**.

4. **GIBSON**, **BROWN**, and **PRICE** agreed to allow **GARRISON** to drive **GIBSON's** Avenger in order to stage an automobile accident.

5. At approximately 6:13 P.M., **GARRISON**, while driving east on Interstate 10, intentionally collided with the Hotard bus.

6. After the staged accident, **GARRISON** instructed **GIBSON** to get behind the wheel of the Avenger to make it appear that **GIBSON** was driving the vehicle at the time of the staged accident.

7. After the staged accident, **GARRISON**, **GIBSON**, **BROWN**, and **PRICE** contacted the NOPD to report that they had been in an automobile accident.

8. At approximately 6:28 P.M., NOPD responded to the scene of the alleged accident and, shortly thereafter, **GIBSON** falsely reported to the NOPD that she had been the driver of the Avenger and that the Hotard bus struck her vehicle while it was changing lanes.

9. Slammer B paid **GARRISON** approximately $600.00 for the staged accident.

10. After the staged accident, **GARRISON** advised **GIBSON**, **BROWN**, and **PRICE** to claim that they were injured and to seek medical treatment.

11. After the staged accident, **GIBSON** and **BROWN** sought medical treatment with doctors and healthcare providers who are known to the Grand Jury, even though neither of them were injured.

12. On or about April 4, 2016, the State Farm/Gibson Lawsuit was filed in FCC.

13.     On or about June 16, 2016, an intervention was filed in the State Farm/Gibson Lawsuit in CDC.

14.     On or about September 29, 2016, Attorney A filed the Garrison Lawsuit in CDC.

15.     On or about October 17, 2016, the Price and Brown Lawsuit was filed in CDC.

16.     On or about January 29, 2017, **GARRISON's** substitute counsel, Attorney B, submitted a settlement demand seeking approximately $2,000,000.00 by facsimile to Hotard, All Aboard, and Lancer's counsel.

17.     On or about February 10, 2017, **BROWN** and **PRICE's** counsel submitted a settlement demand seeking approximately $6,000.00 for **BROWN** and approximately $17,500.00 for **PRICE** via the United States Postal Service to Hotard, All Aboard, and Lancer's counsel.

18.     After on or about July 27, 2017, **BROWN** endorsed a settlement check in the approximate amount of $5,000.00 that she received from Hotard, All Aboard, and Lancer's counsel.

19.     After on or about July 27, 2017, **PRICE** endorsed a settlement check in the approximate amount of $12,500.00 that she received from Hotard, All Aboard, and Lancer's counsel.

20.     On or about December 11, 2017, **GIBSON's** counsel submitted a settlement demand seeking approximately $20,815.45 via email to Hotard, All Aboard, and Lancer's counsel.

21.     After on or about December 29, 2017, **GIBSON** endorsed a settlement check in the approximate amount of $10,000.00 that she received from Hotard, All Aboard, and Lancer's counsel.

14

22.     On or about January 12, 2018, **GARRISON** provided false testimony in a deposition taken in conjunction with the Garrison, State Farm/Gibson, and the Price and Brown Lawsuits.

23.     After on or about August 7, 2018, **GARRISON** endorsed a settlement check in the approximate amount of $650,000.00 that he received from Hotard, All Aboard, and Lancer's counsel.

24.     On or about August 24, 2018, Attorney B issued **GARRISON** a check in the approximate amount of $80,763.38 in settlement for his fraudulent lawsuit.

## The September 6, 2017, Staged Accident (2015 Toyota RAV4)

The below listed Overt Acts all occurred on or about September 6, 2017, unless noted otherwise.

25.     At a time unknown but prior to on or about September 6, 2017, Co-Conspirator B contacted **ERICA LEE** and arranged a meeting for **ERICA LEE** and Passenger A for the purpose of staging an automobile accident.

26.     **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE** agreed to stage an automobile accident.

27.     **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE** used **ERICA LEE's** RAV4 to pick up Passenger A and **GARRISON**.

28.     **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE** agreed to allow **GARRISON** drive to **ERICA LEE's** RAV4 for the purpose of staging an automobile accident with a tractor-trailer in order to obtain money through fraud.

29.     **GARRISON** drove **COLEMAN**, **DONISHA LEE**, **DONREION LEE**, **ERICA LEE**, and Passenger A in the RAV4 to locate another vehicle to collide with on Interstate 10 in the vicinity of the Almonaster exit.

30.     At approximately 10:05 P.M., **GARRISON**, while driving east on Interstate 10, observed a 2016 Freightliner tractor-trailer operated by Averitt, and **GARRISON** intentionally collided with the Averitt tractor-trailer.

31.     **GARRISON** exited **ERICA LEE's** RAV4 after the collision and told **ERICA LEE** to get behind the wheel of the RAV4 to make it appear that **ERICA LEE** was driving the vehicle at the time of the staged accident.

32.     After the staged accident, **ERICA LEE** contacted the NOPD to report that she had been in an automobile accident.

33.     **ERICA LEE** falsely reported to the NOPD that she had been the driver of the RAV4 and that the tractor-trailer had struck her vehicle.

34.     Passenger A falsely claimed to the NOPD that she was **AISHA THOMPSON**.

35.     Approximately one or two days after the staged accident, **COLEMAN, DONISHA LEE, DONREION LEE, ERICA LEE**, and **THOMPSON** went to an attorney's office for the purpose of collecting money from the insurance and trucking company.

36.     **COLEMAN, DONISHA LEE, DONREION LEE, ERICA LEE**, and **THOMPSON** sought medical treatment from doctors and healthcare providers who are known to the Grand Jury.

37.     **THOMPSON** treated for approximately six months despite not being in the RAV4 at the time of the staged accident.

38.     On or about April 11, 2018, and on or about July 6, 2018, an attorney known to the Grand Jury mailed correspondence via the U.S. Postal Service to ACE in Philadelphia, Pennsylvania containing settlement demands for policy limits on behalf of **THOMPSON**, **COLEMAN**, **DONISEHA LEE**, and **DONREION LEE**.

39.     On or about July 25, 2018, the Erica Lee Lawsuit was filed in CDC.

40.     On or about August 27, 2018, the Thompson Lawsuit was filed in CDC.

41.     On or about March 25, 2019, **COLEMAN** endorsed a settlement check in the approximate amount of $7,500.00.

42.     On or about March 25, 2019, **DONREION LEE** endorsed a settlement check in the approximate amount of $9,000.00.

43.     On or about March 26, 2019, **DONISHA LEE** endorsed a settlement check in the approximate amount of $6,000.00.

44.     On or about March 26, 2019, **THOMPSON** endorsed a settlement check in the approximate amount of $7,500.00.

45.     On or about March 26, 2019, **COLEMAN**, **DONISHA LEE**, and **DONREION LEE** each provided false testimony in depositions taken in conjunction with the Thompson Lawsuit.

46.     On or about April 9, 2019, **THOMPSON** provided false testimony in a deposition taken in conjunction with the Thompson Lawsuit.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2 - 4
(Mail Fraud)

### The October 15, 2015, Staged Accident (2014 Dodge Avenger)

**A.      AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.      THE OFFENSE:**

On or about the dates and in the approximate amounts listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **CORNELIUS GARRISON**, **DONIESHA GIBSON**, **CHANDRIKA BROWN**, and **ISHAIS PRICE**, and others known and unknown to the Grand Jury, for the purpose of executing or attempting to execute the scheme and artifice to defraud set forth in Part C of Count 1, did knowingly cause to be delivered by mail, according to the directions thereon, the following:

| COUNT | DESCRIPTION OF MAILING |
|:-----:|------------------------|
| 2 | July 31, 2017, counsel for Hotard, All Aboard, and Lancer mailed correspondence from ****, Lafayette, LA 70502, via the U.S. Postal Service to counsel for **ISHAIS PRICE** and **CHANDRIKA BROWN**, at ****, New Orleans, LA 70130, containing two settlement checks: (1) payable to **BROWN** and her attorney, in the amount of $5,000.00, and (2) payable to **PRICE** and her attorney, in the amount of $12,500.00. |
| 3 | January 8, 2018, counsel for Hotard, All Aboard, and Lancer mailed correspondence from ****, Lafayette, LA 70502, via U.S. Postal Service to counsel for **DONIESHA GIBSON**, at ****, New Orleans, LA 70131, containing a settlement check payable to **DONIESHA GIBSON** and her attorney, in the amount of $10,000.00. |
| 4 | August 13, 2018, counsel for Hotard, All Aboard, and Lancer mailed correspondence from ****, Lafayette, LA 70502, via the U.S. Postal Service to Attorney B, ****, Kenner, LA 70062, containing a settlement check payable to **CORNELIUS GARRISON** and his attorneys in the amount of $650,000.00. |

## COUNTS 5 - 7
(Mail Fraud)

### The September 6, 2017, Staged Accident (2015 Toyota RAV4)

**A.** **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.** **THE OFFENSE:**

On or about the dates listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **CORNELIUS GARRISON**, **AISHA THOMPSON**, **DEWAYNE COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE**, and others known and unknown to the Grand Jury, for the purpose of executing or attempting to execute the scheme and artifice to defraud set forth in Part C of Count 1, did knowingly cause to be delivered by mail, according to the directions thereon, the following:

| COUNT | DESCRIPTION OF MAILING |
|---|---|
| 5 | April 11, 2018, an attorney known to the Grand Jury mailed an envelope from his/her office, ****, New Orleans, LA 70130, via the U.S. Postal Service to ACE American Insurance Company, Attn: V.B., 436 Walnut Street, Philadelphia, PA 19106-3703, containing a settlement demand on behalf of clients **AISHA THOMPSON**, **DEWAYNE COLEMAN**, **DONISHA LEE**, and **DONREION LEE** demanding "policy limits in full and final settlement of this claim." |
| 6 | July 6, 2018, an attorney known to the Grand Jury mailed an envelope from his/her office, ****, New Orleans, LA 70130, via the U.S. Postal Service to ACE American Insurance Company, Attn: V.B., 436 Walnut Street, Philadelphia, PA 19106-3703, containing a settlement demand on behalf of clients **AISHA THOMPSON**, **DEWAYNE COLEMAN**, **DONISEHA LEE**, and **DONREION LEE** demanding "policy limits in full and final settlement of this claim." |
| 7 | March 1, 2019, GEICO mailed four (4) settlement checks, payable to **AISHA THOMPSON**, **DEWAYNE COLEMAN**, **DONISEHA LEE**, **DONREION LEE**, and their attorneys totaling approximately $30,000.00, from GEICO's offices in Macon, Georgia to GEICO's attorneys located at ****, New Orleans, LA 70163-1116. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## NOTICE OF FORFEITURE

1.     The allegations of Counts 1 through 7 are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.     As a result of the offenses alleged in Counts 1 - 7, the defendants, **CORNELIUS GARRISON**, **DONIESHA GIBSON**, **CHANDRIKA BROWN**, **ISHAIS PRICE**, **AISHA THOMPSON**, **DEWAYNE COLEMAN**, **DONISHA LEE**, **DONREION LEE**, and **ERICA LEE THOMPSON**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property real or personal which constitutes or is derived from proceeds traceable to said offenses.

3.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

     a.     cannot be located upon the exercise of due diligence;

     b.     has been transferred or sold to, or deposited with, a third person;

     c.     has been placed beyond the jurisdiction of the Court;

     d.     has been substantially diminished in value; or

     e.     has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

A TRUE BILL:

FOREPERSON

PETER G. STRASSER
UNITED STATES ATTORNEY

BRIAN M. KLEBBA
EDWARD J. RIVERA
MARIA M. CARBONI
Assistant United States Attorneys

New Orleans, Louisiana
September 18, 2020

21

FORM OBD-34

No.___

UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

THE UNITED STATES OF AMERICA

vs.

CORNELIUS GARRISON; DONIESHA GIBSON; CHANDRIKA
BROWN; ISHAIS PRICE; AISHA THOMPSON; DEWAYNE
COLEMAN; DONISESHA LEE, a/k/a Donisha Lee;
DONREION LEE; ERICA LEE THOMPSON

INDICTMENT

INDICTMENT FOR CONSPIRACY TO COMMIT MAIL
FRAUD, MAIL FRAUD, AND NOTICE OF FORFEITURE

VIOLATIONS: 18 U.S.C. § 371
18 U.S.C. § 1341
18 U.S.C. § 2

_____

A tru___

_____

Bail, $ _____

_____

Filed in open court this _____

2020 _____ day of _____ A.D. __

_____ Clerk

_____

BRIAN M. KLEBBA
Assistant United States Attorney